Filed 7/8/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARK ANTHONY FLORES,<br><br>    Defendant and Appellant. | 2d Crim. No. B250829<br>(Super. Ct. No. 200635236)<br>(Ventura County) |

There are limits to the Three Strikes Reform Act of 2012 (The Reform Act). Relief may be denied in the discretion of the sentencing court upon a finding that a reduced sentence would "pose an unreasonable risk of danger to public safety." (Pen Code § 1170.126(f).) [1]

Mark Anthony Flores asked the trial court to reduce his third-strike 25-year-to-life sentence and resentence him as a second-strike offender. The trial court denied relief impliedly finding that he was outside the "spirit" of The Reform Act. Appellant mounts a facial challenge to the law. He contends that the phrase "pose an unreasonable risk of danger to public safety" is unconstitutionally vague. In addition, he contends that the trial court erroneously required the People to prove his dangerousness by a preponderance of the evidence instead of beyond a reasonable doubt. Finally, he contends the trial court erroneously refused to remove his shackles during his testimony at the hearing on the petition. We affirm.

_____

[1] All statutory references are to the Penal Code.

*Original Sentence and Appeal*

Appellant was convicted by a jury of the unauthorized taking of a vehicle, a nonserious and nonviolent offense. (Veh. Code, § 10851, subd. (a).) He admitted allegations of one prior prison term (§ 667.5, subd. (b)) and two prior serious or violent felonies within the meaning of California's "three strikes" law. (§§ 1170.12, subds. (a)-(d); 667, subds. (b)-(i).) He was sentenced to prison for 25 years to life plus one year for the prior prison term.

He appealed, contending that, pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, the trial court had abused its discretion by refusing to dismiss one of the two prior strikes. We affirmed in an unpublished opinion, *People v. Flores* (July 21, 2009) B207801. Appellant was outside the "spirit" of *Romero.* (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

*The Reform Act*

The Reform Act was added by Proposition 36, which was approved by the voters on November 6, 2012. (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1285 (*Kaulick*).) "Under the 'three strikes' law [citation] as it existed prior to Proposition 36, a defendant convicted of two prior serious or violent felonies would be subject to a sentence of 25 years to life upon conviction of a third felony. Under the Act, however, a defendant convicted of two prior serious or violent felonies is subject to the 25–years–to–life sentence only if the third felony is *itself* a serious or violent felony. If the third felony is not a serious or violent felony, the defendant will receive a sentence as though the defendant had only one prior serious or violent felony conviction, and is therefore a second-strike, rather than a third-strike, offender. The Act also provides a means whereby prisoners currently serving sentences of 25 years to life for a third felony conviction which was not a serious or violent felony may seek court review of their indeterminate sentences and, under certain circumstances, obtain resentencing as if they had only one prior serious or violent felony conviction. According to the specific language of the Act, however, a current inmate is not entitled to resentencing if it would

2

pose an unreasonable risk of danger to public safety."  (*Id*., at pp. 1285-1286, fn. omitted.)

*Vagueness*

Appellant contends that the use of the word "unreasonable" in the phrase, "pose an unreasonable risk of danger to public safety" renders it "so vague that men and women of common intelligence must necessarily guess at its meaning and differ as to its application."  The vagueness doctrine is sound, venerable, and requires the government to give reasonable notice to the public so that it will know what is, and what is not, a crime. (E.g. *People v. Mirmirani* (1981) 30 Cal.3d. 375, 382.)  In our view, it is debatable whether the vagueness doctrine has application to a superior court judge making a discretionary sentencing decision.  (Compare *People v. Mirmirani, supra,* 30 Cal.3d at p. 382 [a law must be certain enough to prevent arbitrary or discriminatory enforcement by judges]; see also *People v. Sipe* (1995) 36 Cal.App.4th 468, 480 [the vagueness doctrine may apply to sentencing statutes].)

Appellant appears to believe that if the challenged phrase is impermissibly vague, we would strike the exception and all inmates would automatically be entitled to relief if the latest offense was not a serious or violent offense.  This would "overrule" the voters and be the height of judicial activism.  We do not sit as a "super Legislature."  (See *Unzueta v. Ocean iew School Dist*. (1992) 6 Cal.App.4th 1689, 1699.)  We also do not sit as a "super electorate."

We answer the contention on the merits.  The word , "unreasonable," is not impermissibly vague.  In 1977 our United States Supreme Court noted that, in *Cameron v. Johnson* (1968) 390 U.S. 611, 615-616 [20 L.Ed.2d 182, 88 S.Ct. 1335], the California Supreme court had rejected a "vagueness attack on a Mississippi statute which prohibited ' "picketing . . . in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from any . . . county . . . courthouse." ' "  (*Kash Enterprises, Inc. v. City of Los Angeles* (1977) 19 Cal.3d 294, 303 (*Kash Enterprises*).)  Our Supreme Court continued: "Justice Brennan, writing for the *Cameron* court, observed: 'Appellants . . . argue that the statute forbids picketing in terms "so vague that men of common

3

intelligence must necessarily guess at its meaning and differ as to its application. . . ." [Citation.] But . . . [t]he terms "obstruct" and "unreasonably interfere" plainly require no "guess[ing] at [their] meaning." Appellants focus on the word "unreasonably." It is a widely used and well understood word and clearly so when juxtaposed with "obstruct" and "interfere." We conclude that the statute clearly and precisely delineates its reach in words of common understanding.' " (*Id.*, at pp. 303-304.)

In *Kash Enterprises* our California Supreme Court concluded that Justice Brennan's "reasoning applies equally" to a Los Angeles ordinance at issue in that case. (*Kash Enterprises, supra*, 19 Cal.3d at p. 304.) It also applies equally to the phrase "pose an unreasonable risk of danger to public safety" in section 1170.126, subdivision (f). The word "unreasonable" " 'is a widely used and well understood word and clearly so when juxtaposed' " with "risk of danger." (*Ibid*; see also *People v. Morgan* (2007) 42 Cal.4th 593, 606 [" 'As the Supreme Court stated in *Go–Bart Importing Co. v. United States* (1931) 282 U.S. 344, 357 [51 S.Ct. 153, 75 L.Ed. 374], "There is no formula for the determination of reasonableness." Yet standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind.' "].)

Surely a superior court judge is capable of exercising discretion, justly applying the public safety exception, and determining whether a lesser sentence would pose an unreasonable risk of harm to the public safety. (See e.g. *People v. Espinoza* (2014) 226 Cal.App.4th 635 [grant of relief where a lesser sentence would not impose an unreasonable risk of harm to the public safety].)[2] This is one of those instances where the law is supposed to have what is referred to by Chief Justice Rehnquist as "play in the joints." (*Locke v. Davey* (2004) 540 U.S. 712, 718 [158 L.Ed.2d 1].) "This is a descriptive way of saying that the law is flexible enough for the . . . trial court to achieve

---

[2] The rules attendant to the exercise of discretion have been the subject of numerous opinions, both civil and criminal. (See e.g. *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448-1449 and cases cited therein.)

a just result depending uon the facts, law, and equities of the situation." (*Advanced Mod.Sputtering, Inc. v. Superior Court* (2005) 132 Cal.App.4th 826, 835.)

*Standard of Proof*

Appellant argues that the trial court erroneously required the People to prove dangerousness by a preponderance of the evidence.  Appellant maintains that "dangerousness is a fact that . . . must be submitted to the jury and found beyond a reasonable doubt."   The *Kaulick* court considered this issue at length.  (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1306.)  It concluded that dangerousness "need not be established by proof beyond a reasonable doubt to a jury." (*Id*., at p. 1303.)  The court held that "the proper standard of proof is preponderance of the evidence." (*Id*., at p. 1305.)  The court reasoned: "The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate.  It does not provide for wholesale resentencing of eligible petitioners.  Instead, it provides for a proceeding where the original sentence may be modified downward.  Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues. Thus, there is no constitutional requirement that the facts be established [to a jury] beyond a reasonable doubt." (*Id*., at pp. 1304-1305.)  Appellant asserts that this statement of law in *Kaulick* was "mostly . . . dicta."  It "was not dicta because it was responsive to the issues raised on appeal and was intended to guide the parties and the trial court in resolving the matter following . . . remand.  [Citation.]" (*Garfield Medical Center v. Belshe* (1998) 68 Cal.App.4th 798, 806.)  In the introduction to its opinion, the *Kaulick* court said that it "will discuss several issues likely to arise on remand, including the prosecution's burden of proof on the issue of dangerousness." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1286.)

Appellant is critical of the *Kaulick* opinion.  We think it is well written, correct, and could serve as a model for opinion writing.  He has not persuaded us that *Kaulick* was wrongly decided.  We decline the request to disagree with the *Kaulick* opinion.  We reject his contention that, "[e]ven if not compelled by Sixth Amendment concerns, this court should hold that the finding [of dangerousness] must be made by a beyond a reasonable doubt standard."  (Bold omitted.)

*Courtroom Shackling*

Appellant contends that the trial court abused its discretion by refusing to remove his shackles while he was testifying at the hearing on his petition. The record is not developed on this issue. The People argue that the shackling of appellant did not prejudice him. Appellant, on the other hand, asserts that "the shackling was prejudicial because it distracted and impaired [his] ability . . . to competently testify on his own behalf."

"[R]estraints [such as shackles] can impair a defendant's ability to testify effectively [citation] . . . ." (*People v. Jackson* (2014) 58 Cal.4th 724, 741.) But the unwarranted shackling of a defendant is harmless error "if there is no evidence . . . that the shackles impaired or prejudiced the defendant's right to testify . . . ." (*People v. Anderson* (2001) 25 Cal.4th 543, 596.)

The record contains no evidence that the shackling of appellant impaired or prejudiced his right to testify. Appellant testified that, although the shackles were a "distraction," he was "not having any problems mentally" on the witness stand and understood counsel's questions "perfectly well."

*Disposition*

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

6

Patricia Murphy, Judge

Superior Court County of Ventura

_____

Stephen P. Lipson, Public Defender, County of Ventura and Michael C. McMahon, Chief Deputy, for Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Mark E. Weber, Deputy Attorney General, for Plaintiff and Respondent.